# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRYANT JUNCO,

    Plaintiff,

    v.                                                    Case No. 21-CV-1461

ADVOCATE AURORA HEALTH,

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Bryant Junco, appearing *pro se*, sues his former employer, Aurora Health Care, Inc. (improperly named Advocate Aurora Health), for discrimination on the basis of sex and for retaliation for opposing sex discrimination, in violation of Title VII of the Civil Rights Act of 1964. Aurora moves to dismiss Junco's amended complaint pursuant to Fed. R. Civ. P. 12(b)(5) and (6) on the grounds that: (1) Junco's complaint is barred by the doctrine of judicial estoppel for failing to disclose his potential claim against Aurora to the bankruptcy court; (2) Junco filed his complaint more than ninety days after receiving his right to sue letter from the United States Equal Employment Opportunity Commission ("EEOC"); (3) Junco's retaliation claim is untimely; and (4) Junco failed to timely serve Aurora under Fed. R. Civ. P. 4(m). (Docket # 19.) For the reasons that follow, the defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted, and the amended complaint is dismissed.

## BACKGROUND

Junco began working for Aurora as a transporter in May 2020. (Am. Compl, Docket # 6; EEOC Charge, Docket # 19-1.)[1] He alleges that during his employment, he was aware that female transporters were given easier assignments and were allowed to take longer breaks. (*Id.*) He alleges that he was sometimes forced to perform heavier assignments by himself that actually required two people and was forced to transport COVID-positive patients without the proper personal protective equipment. (Am. Compl. at 2–3.) Junco alleges that he repeatedly complained to management about the treatment, but they failed to take corrective action. (EEOC Charge at 2; Am. Compl. at 3.) Junco alleges that he applied for a PRN position in late August 2020, but he was denied the job. (EEOC Charge at 2.)

On August 20, 2020, Junco filed a Chapter 7 Bankruptcy Petition. (Docket # 19-2 at 2–53.) The petition requires the debtor to list "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." (*Id.* at 14.) The form provides the following as examples: "accidents, employment disputes, insurance claims, or rights to sue." (*Id.*) Junco lists one potential asset: "judgment against Kennesaw Wrecker Service Inc for damages – entered in Cobb County GA." (*Id.*)

In September 2020, Junco alleges that he attempted to complain to Aurora's Human Resources Department about the disparity in treatment, but he was told to return to work immediately. (Am. Compl. at 3.) When he refused to return to work until he could make the

---

[1] While a court generally may not, in evaluating a motion to dismiss under Rule 12(b)(6), consider matters outside the complaint without converting the motion into one for summary judgment, there are several exceptions to this rule. Such exceptions include consideration of documents that are referred to in the complaint, unquestionably authentic, and central to the plaintiff's claim and documents of which the court can take judicial notice. *Whitehead v. Discover Bank*, 118 F. Supp. 3d 1111, 1117–18 (E.D. Wis. 2015). Junco's EEOC Charge, Right to Sue letter, and bankruptcy filings fall under these exceptions.

administration aware of his grievances, he was "terminated on the spot" and escorted out of the building by hospital security. (*Id.*)

Junco received a bankruptcy discharge on November 18, 2020, and his Chapter 7 Bankruptcy case was closed. (Docket # 19-3.) Junco received a Right to Sue letter from the EEOC on September 23, 2021 (Docket # 6-1) and filed the instant lawsuit on December 23, 2021 (Compl., Docket # 1).

**APPLICABLE RULES**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.*

(citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679.

A defendant may enforce the service of process requirements through a pretrial motion to dismiss under Fed. R. Civ. P. 12(b)(5). The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). If, on its own or on the defendant's motion, the district court finds that the plaintiff has not met that burden and lacks good cause for not perfecting service, the district court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant. *Id.*; Fed. R. Civ. P. 4(m). The decision whether to dismiss or extend the period for service is inherently discretionary, and a district court's judgment will be reviewed only for abuse of that discretion. *Id.*

## ANALYSIS

Again, Aurora asserts four separate grounds on which it contends Junco's amended complaint must be dismissed. First, Aurora argues that Junco failed to disclose his potential claim against Aurora to the bankruptcy court and thus this action is barred by the doctrine of judicial estoppel. Second, Aurora argues that Junco's complaint is untimely because he filed it more than ninety days after receiving his Right to Sue letter from the EEOC. Third, Aurora argues that Junco failed to include his retaliation claim in his original complaint and

4

thus that claim is untimely. And fourth, Aurora argues that Junco failed to timely serve Aurora under Rule 4(m). (Docket # 19.) I will address each argument in turn.

    1.    *Judicial Estoppel*

Aurora argues that when Junco filed his petition for Chapter 7 Bankruptcy, he was aware of his potential sex discrimination claim against Aurora but failed to disclose the claim in his bankruptcy petition. Aurora further argues that even after Junco was terminated in September 2020, thus making clearer his potential claim against Aurora, Junco did not update the bankruptcy court with this claim. In short, Aurora asserts that at no time prior to the November 18, 2020 discharge was the bankruptcy court aware of his sex discrimination claim against Aurora, which Junco now values at approximately $360,000.00. (Docket # 19 at 5–7.)

Junco counters that he did not file his EEOC charge until April 2021, five months after his bankruptcy was discharged, and that Aurora offers "no evidence other than hearsay and assumption that Plaintiff knew he was going to bring a claim against the Defendant at the time of OR during bankruptcy proceedings." (Docket # 25 at 2.) Junco argues that he was in dialogue with Aurora's upper HR management until late September/early October 2020 and that it was his honest belief that Aurora was going to provide an amicable resolution and perhaps even reinstate his employment. (*Id.* at 3–4.)

Judicial estoppel is an equitable doctrine, invoked to protect the integrity of the courts by preventing a party who prevails on one ground in a lawsuit from repudiating that ground in a subsequent lawsuit. *See De Vito v. Chicago Park Dist.*, 270 F.3d 532, 535 (7th Cir. 2001). In the context of a bankruptcy, judicial estoppel is used to bar a debtor from pursuing a cause of action after the bankruptcy ends that he or she failed to disclose to the bankruptcy

court during the course of the bankruptcy proceedings. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). In other words, a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends. *Id.* Although this doctrine is seemingly harsh, the theory behind it is that it "induces debtors to be truthful in their bankruptcy filings[, which] will assist creditors in the long run (though it will do them no good in the particular case)—and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers." *Id.*

Courts have repeatedly observed that judicial estoppel is a discretionary doctrine, and there is no set formulation for deciding when to apply it. *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts."); *accord Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011) ("For reasons we don't understand, the cases are coy about defining [judicial estoppel]."). Factors courts consider include: (1) whether the plaintiff took an inconsistent position in earlier litigation; (2) whether the plaintiff prevailed on that claim; and (3) if the claim is not estopped, either the plaintiff will derive an unfair advantage or the defendant will suffer an unfair detriment. *Id.* The three factors are not a "test" for when judicial estoppel should apply; it remains a discretionary doctrine a court may apply as needed to protect interested parties and the integrity of the judicial system. *Id.*

Junco argues that he was unsure whether he was actually going to file suit against Aurora while his bankruptcy was pending from August through November 2020. However,

Junco was still required to inform the bankruptcy court of any claims. The bankruptcy petition specifically requires the debtor to list "claims against third parties, *whether or not you have filed a lawsuit or made a demand for payment*." (Docket # 19-2 at 14) (emphasis added). While Junco may have been unsure whether he was actually going to sue Aurora, this is not a situation in which Junco was ignorant of his claims against Aurora. He asserts that the earliest date discrimination occurred was May 1, 2020. (Docket # 19-1 at 2.) Junco acknowledges that he was "in dialogue" with Aurora's upper HR management in late September/early October 2020, attempting to reach an amicable resolution to his issues. (Docket # 25 at 2–4.) In other words, by Junco's own admission, both before and during the pendency of his bankruptcy proceedings, he was aware that he had a discrimination claim against Aurora, even if he was trying to resolve it without resorting to the courts.

Junco's case is the quintessential situation where judicial estoppel should be applied. In his bankruptcy petition, Junco asserted that he had approximately $41,301.00 in liabilities and only $13,581 in asserts. (Docket # 19-2 at 9.) Junco received a bankruptcy discharge based on these representations, removing his personal liability for the debts owed. (Docket # 19-3.) Junco now claims, however, that his lawsuit against Aurora is worth $360,000.00. (Docket # 6 at 4.) Junco was aware of this claim prior to and during his bankruptcy proceedings. If the bankruptcy court was aware that Junco had a potential asset that would satisfy all of his debts owed, the bankruptcy court would likely have not granted the discharge so quickly, or at all. Given this stark inconsistency between Junco's previous representations to the bankruptcy court and the position he now takes in this action, I find that Junco's amended complaint is barred by the doctrine of judicial estoppel and must be dismissed.

### 2. Timeliness of Complaint and Retaliation Claim

Aurora also moves to dismiss Junco's complaint on the grounds that it was untimely filed. To the extent the entire complaint is not dismissed on timeliness grounds, Aurora further argues that Junco pled his retaliation claim for the first time in the amended complaint, which is also untimely. Under Title VII, a plaintiff has ninety days from receipt of the "Notice of Right to Sue" issued by the EEOC to file suit. *Sager v. Hunter Corp.*, 665 F. Supp. 575, 577 (N.D. Ill. 1986). This filing period, however, is not a jurisdictional prerequisite to filing a Title VII suit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002). Rather, "it is a requirement subject to waiver, estoppel, and equitable tolling 'when equity so requires.'" *Id.* (internal citation omitted).

In the amended complaint, Junco alleges that he received his Right to Sue letter on or about September 23, 2021. (Docket # 6 at 2.) Ninety days from September 23, 2021 is December 22, 2021. Junco's complaint was filed on December 23, 2021. (Docket # 1.) Thus, Aurora asserts that Junco's complaint was filed one day too late. (Docket # 19 at 7.) Junco asserts that he sent his complaint via overnight mail on December 20, 2021 and that the mail was postmarked December 20, 2021 and received by the Clerk of Court on December 21, 2021, though it was not formally filed until December 23, 2021. (Docket # 25 at 4.) He argues that the postmark of December 20, 2021 should fall under the "mailbox rule." (*Id.*)

A complaint is "filed" when the court clerk receives the complaint, not when it is postmarked. *Robinson v. Doe*, 272 F.3d 921, 922 (7th Cir. 2001). The "mailbox rule," however, establishes that certain notices or motions of *pro se* prisoners should be considered filed when they are given to prison authorities, rather than when received by the court.

*Rutledge v. United States*, 230 F.3d 1041, 1051 (7th Cir. 2000). This rule emphasizes the special difficulties faced by *pro se* prisoners, *id.*, and does not apply to non-prisoners. As such, Junco does not benefit from the mailbox rule.

Junco asserts, however, that the Clerk's Office received the package on December 21, 2021, as he sent it via overnight mail on December 20, 2021. While I agree that the envelope shows that the package was scheduled to arrive on December 21, 2021 at 6:00 p.m. (Docket # 1), the package, it appears, was not actually received by the Clerk's Office until December 23, 2021. This is confirmed by the stamp on the complaint indicating that the clerk's office received the complaint on December 23, 2021 (*id.*) and the tracking information for the package, showing it was delivered at 1:06 p.m. on December 23, 2021, United States Postal Service, Tracking, No. 9581706678261354366894, *available at* www.tools.usps.com.[2] These potential delays in the mail emphasize why it is important to not mail filings only a few days prior to the expiration of a limitations period. Although tardy by only one day, Junco's complaint is untimely, and he has failed to demonstrate equity requires tolling of the limitations period. Thus, Junco's complaint is alternatively dismissed on this ground. Given my finding as to Junco's original complaint, I need not address Aurora's alternative argument regarding the timeliness of the retaliation claim as pled in the amended complaint.

3. *Failure to Timely Serve Complaint*

Finally, Aurora argues that dismissal is warranted based on Junco's failure to timely serve the complaint. (Docket # 19 at 8.) The complaint must be served on the defendant within ninety days after the complaint is filed. Fed. R. Civ. P. 4(m). Aurora contends that

---

[2] I take judicial notice of the information presented on the USPS website. *See, e.g.*, *Incandela v. Great-W. Life & Annuity Ins. Co.*, No. 07-CV-7051, 2010 WL 438365, at *5 (N.D. Ill. Feb. 4, 2010).

Junco never served it with his original complaint and did not serve the amended complaint until 270 days after the original complaint was filed. (Docket # 19 at 8.)

Junco filed his original complaint on December 23, 2021, along with a motion for leave to proceed without prepayment of the filing fee (or *in forma pauperis*). (Docket # 1 and Docket # 2.) On January 3, 2022, the Honorable J.P. Stadtmueller denied Junco's *in forma pauperis* motion without prejudice and upon screening the complaint, ordered him to file an amended complaint by January 31, 2022. (Docket # 4.) Junco timely filed an amended complaint and additional motion for leave to proceed without prepayment of the filing fee (Docket # 6 and Docket # 7), which Judge Stadtmueller granted on March 15, 2022. (Docket # 8.) On June 30, 2022, Judge Stadtmueller ordered the United States Marshal Service to serve a copy of the amended complaint on Aurora. (Docket # 10.) Aurora was ultimately served on September 19, 2022. (Docket # 15.)

Aurora is correct that the ninety-day service period runs from the filing of the original complaint, not the amended complaint, and Aurora was not served until 270 days after the filing of the original complaint. *See Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir. 1987) ("We do not believe, however, that the order [allowing the complaint to be amended] started the 120 days running again from the date when the amended complaint was filed. The purpose of allowing complaints to be amended is to enable the pleadings to be conformed to the developing evidence rather than to extend the time for service indefinitely."). However, Junco's circumstance was unique.

Because Junco filed a motion for leave to proceed without prepayment of the filing fee along with his complaint, Junco was not permitted to proceed until his *in forma pauperis* motion was decided. In other words, Junco would not have immediately served the

10

Case 2:21-cv-01461-NJ   Filed 12/19/22   Page 10 of 12   Document 27

complaint on Aurora because he was waiting for the Court to determine whether he could, indeed, proceed or whether he would have to pay the filing fee.

In early January 2022, Judge Stadtmueller denied Junco's *in forma pauperis* motion without prejudice, giving him leave to file an amended complaint. (Docket # 4.) Junco timely filed an amended complaint and new motion for leave to proceed without prepayment of the filing fee; however, through no fault of his own, the Court did not address the motion until March 15, 2022. (Docket # 8.) At this time, Judge Stadtmueller informed Junco that he was to indicate within fourteen days whether he wanted the United States Marshal Service to serve the defendant or whether he wished to obtain service himself. (*Id.*) A second rather significant delay occurred, as Junco did not respond to the Court's request until May 4, 2022, requesting service by the Marshals. (Docket # 9.) Judge Stadtmueller, however, did not order the Marshals to serve the complaint until June 30, 2022. (Docket # 10.) After this date, it appears the Marshals delayed in effecting service, as the Clerk's Office followed up on the status in mid-August, 2022 and the Amended Complaint and associated documents were again transmitted to the Marshals for service on August 31, 2022. (Docket # 13.) Aurora was ultimately served on September 19, 2022 (Docket # 15), less than three weeks later.

While Junco did arguably cause the delay between the March 15, 2022 Order and his May 4, 2022 request for service, the remainder of these significant delays were out of Junco's control. And again, while the ninety-day service window usually begins with the filing of the complaint, given Junco's *in forma pauperis* status and the Court's screening procedure, it would be unfair to fault Junco for not immediately serving defendant while waiting for a decision on his motion for leave to proceed without prepayment of the filing

11
Case 2:21-cv-01461-NJ   Filed 12/19/22   Page 11 of 12   Document 27

fee. Thus, I do not find the delay in serving Aurora a proper ground on which to dismiss the amended complaint. As such, to the extent Aurora moves for dismissal pursuant to Rule 12(b)(5), the motion is denied.

## CONCLUSION

Aurora moves for dismissal of the complaint on multiple grounds. I find that Junco's complaint must be dismissed pursuant to the doctrine of judicial estoppel. Alternatively, I find that Junco's complaint is untimely, and he has failed to demonstrate equity requires tolling of the limitations period. To the extent, however, Aurora moves to dismiss the complaint for failure to timely serve the complaint, the motion is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion to dismiss (Docket # 18) is **GRANTED**. The plaintiff's complaint is dismissed.

**IT IS FURTHER ORDERED** that this case is dismissed. The Clerk of Court is to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th of December, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge